Wasmer v. Lean.

---

CHARLES WASMER v. GEORGE E. LEAN.

[FILED JULY 2, 1891.]

1. The evidence considered, and *held*, to sustain the verdict and judgment.

2. The instructions given, and those requested and refused, examined, and *held*, properly given and refused.

ERROR to the district court for Howard county. Tried below before HARRISON, J.

*T. T. Bell*, and *Paul & Templin*, for plaintiff in error.

*Henry Nunn, contra.*

COBB, CH. J.

This action was brought by the defendant in error against the plaintiff in error to recover a sum claimed as commissions for services rendered in procuring a purchaser for certain real estate.

The petition in the court below alleges that the defendant, some time in the month of January, 1888, placed in the hands of the plaintiff, for sale on commission, lots 11 and 12 in block 19 of the city of St. Paul, in this state, for the sum of $3,500; that defendant agreed to pay plaintiff a commission of five per cent on the first $1,000, and two and one-half per cent on the balance of the said $3,500 if plaintiff would furnish a customer for said property at that price; that on or about the third day of August, 1888, plaintiff found a customer for said property who purchased the same at the price named; that plaintiff negotiated and effected said sale, and that there is due him from defendant, as the commission agreed upon, $112.50.

The answer of the defendant is a general denial. There was a trial to a jury with a verdict and judgment for the plaintiff for the above-named sum. Defendant having moved in vain for a new trial, brought the case to this court by petition in error.

There are some half-dozen errors assigned, but one of which is presented or argued in the brief of counsel, and that alone will be examined. It is: "That the verdict is not sustained by sufficient evidence."

Upon the trial, George E. Lean, the plaintiff, was called and examined as a witness in his own behalf. He testified that he was by occupation cashier of the First National Bank of St. Paul, and acquainted with Charles Wasmer, the defendant; that in January, 1888, he made a contract with defendant in regard to selling the real estate described

in the petition and that the contract was made by conver-sation in the First National Bank at St. Paul; that in the first place he wrote to Mr. Wasmer, who resides at Grand Island, asking him what he would take for that property, stating that witness thought he could furnish him a cus-tomer for it; said that it would be a cash transaction and witness wanted his lowest figures; that in answer to that letter Mr. Wasmer came up to see witness at the bank and stated that he would take $3,500 cash for the property; witness told him he thought that it was a very good price and asked him if that was the lowest that he would take; and he said that it was; witness asked him what commis-sion he would allow him if he furnished him a purchaser for him at that price, and he said he would give him five per cent on the first $1,000 and two and one-half per cent on the balance; witness told him that he would try and see what he could do with it; that he did make an effort to find a customer for the property, and that he did find a customer who purchased the property at that price in Au-gust, 1888, and that the customer's name is R. E. Dallas; that Mr. Wasmer accepted said customer at that price; that Mr. Dallas paid Wasmer the price he asked, $3,500; that the consideration was paid and the property transferred on the first day of August, 1888, but that Mr. Wasmer re-fused to pay him his commission.

Upon cross-examination the plaintiff admitted that he was not a real estate agent by profession; that the defend-ant came to him in response to a letter which witness wrote to him, asking what he would take for the property.

Mr. A. E. Cady was called and sworn on the part of the plaintiff, and testified that he was acquainted with the de-fendant, Mr. Wasmer. That on the 3d day of August he came to the bank sometime in the morning and inquired for Mr. Lean; witness told him that Mr. Lean was out of town. Witness and defendant then sat down in the outside office of the bank, and defendant said that unless that property

was sold pretty quick, he wouldn't stand to his agreement to sell it for $3,500; that in this conversation with the defendant, witness was acting for and on behalf of the plaintiff and that he asked the defendant, first, when he was going away. Defendant told witness, and witness replied to defendant that he would endeavor to get the party so they would have a meeting so that some understanding could be reached, and appointed an hour for him to be at the bank, which he agreed to. Witness then went and found the party and told him of the hour and had them both there about that time. Introduced Mr. Dallas to Mr. Wasmer; took them into the back office of the bank and brought about the topic of the sale of that property; brushed away what barriers seemed to present themselves and brought about an agreement. They agreed on the purchase and sale of the property. At about half past five or six o'clock, the plaintiff, having been away on business to Elby, that day returned. Witness informed him of Mr. Wasmer's visit to the bank and all that had transpired.

Upon cross-examination it was brought out pretty clearly from this witness, that he was, during all of the time embraced in these transactions, an officer or employe of the bank of which Mr. Lean was cashier, but in what capacity does not appear, and that shortly after the first visit of the defendant to the bank, which he made in response to the letter of the plaintiff, this witness, at the request of the plaintiff, agreed with him to render him all possible assistance in procuring a purchaser of the defendant's lots and carry out the understanding between the defendant and the plaintiff in respect thereto.

Mr. R. C. Dallas was called and sworn as a witness for the plaintiff and testified that on the 3d or 4th of August, 1888, he bought lots 11 and 12 from Mr. Wasmer and paid $3,500 for them; that he first learned that this property was for sale from Mr. George E. Lean, and again

from Mr. Cady that it was for sale for $3,500; that he had often had conversation with the plaintiff in regard to the purchase of the property ; that the plaintiff recommended the property to him at different times, and had said that it was a good chance for witness to make money by buying that property and building a hotel, and that plaintiff and his associates would do something towards it, a hundred or two dollars or so.

Upon cross-examination this witness stated in full that he purchased the property ; that plaintiff was present when he purchased it; that he was present both on the 3d and 4th days of August; that at the conversation in the back room of the bank of the 3d day of August referred to by Mr. Cady, witness and defendant agreed upon the business and the price according to what witness Cady stated; that the sale was then made and agreed upon on the 3d, but not secured until the 4th.   There was nothing paid on the purchase on the 3d, the actual payment and exchange of papers was made on the 4th; that negotiations were all done in the back office of the bank, and witness had nothing to do with it; the sale was not consummated until the 4th; that witness paid Charles Wasmer $3,500; the First National bank advanced $2,500, and there was a note went in for $1,000 ; this was all turned over to Mr. Wasmer. Witness further stated that he did not know the actual date that the sale was consummated; that George Lean really consummated the sale ; that the witness did not pay a cent down on the 3d day of August, but that on the 4th day he paid $3,500 down.

The plaintiff being recalled as a witness on his own behalf, further testified that on the 3d day of August he returned from Elby somewhere about 6 o'clock; that he saw the defendant that evening; first learned that he was in town from Mr. Cady; that witness remarked to him that he thought he had made a good sale in disposing of his property, and he said that he thought it was.   Plaintiff told

him that this was the same sale that he (plaintiff) had been working on from the time he came up here, the same party, and that the plaintiff claimed that it was his sale; that defendant replied that he didn't know about that; he said he thought he had made the sale himself, but finally said he would think it over during the night and would let plaintiff know in the morning his decision in the matter; that on the next day the sale was completed, August 4, that is when the transfer of papers was made and the money paid; that on the 4th plaintiff asked the defendant, when making out the certificate that he was to accept in payment, if he should take out his commission at the time. He said no, he refused to pay it. Plaintiff told him he would have to try it in court; that he thought he was entitled to it and demanded it.

Charles Wasmer, the defendant, was sworn and examined as a witness on his own behalf. In his testimony he contradicted quite a number of the statements of the plaintiff. Defendant also called Harry Schikendantz as a witness on his behalf. I do not deem it necessary to state the evidence of either of these witnesses further than to say that so far as it was material to the issue, it consisted solely in contradiction of facts stated in evidence on the part of the plaintiff. The facts testified to by witnesses on the part of the plaintiff are, in my view, sufficient to sustain the verdict, and in view of the verdict must be taken as true. The judgment of the district court is therefore

AFFIRMED.

THE other judges concur.